# EXHIBIT 1



COPY

OCT 18 2013

MICHAEL K. JEANES, CLERK
K. CASOOSE
DEPUTY CLERK

LAW OFFICES
PHELPS LAW GROUP
PROFESSIONAL LIMITED LIABILITY COMPANY
4045 EAST UNION HILLS ROAD
SUITE A-104
PHOENIX, ARIZONA 85050
(602) 788-2089
Jon L. Phelps (027152)
jon@phelpslawgroupaz.com
Erica M. Fedon (030300)
erica@rplawaz.com
Attorneys for Plaintiff Seth Haller

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Seth Haller, a married man, | NO. CV2013-051212 |
| Plaintiff, | VERIFIED COMPLAINT |
| vs. | |
| Advanced Industrial Computer, Inc., | |
| Defendants. | |

Plaintiff Seth Haller ("Plaintiff"), by and through undersigned counsel, for his Complaint alleges as follows:

### INTRODUCTION

This is an action brought pursuant to the Arizona Civil Rights Act and Title VII of the Civil Rights Act of 1964 to correct an unlawful employment practice, provide appropriate relief to an aggrieved person, and vindicate the public interest. Specifically, Seth Haller (hereinafter "Mr. Haller") brings this action to redress the injury inflicted upon him by his former employer, Advanced Industrial Computer, Inc. (hereinafter "AIC") which occurred as a result of racial discrimination in violation of the Arizona Civil Rights Act, A.R.S. § 41-1463(B) and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this matter pursuant to A.R.S. § 41-1481(D) and 42 U.S.C.A. § 2000e-5(f).

2. Venue is proper in Maricopa County pursuant to A.R.S. § 12-401.

## PARTIES

3. At all relevant times, Mr. Haller was a resident of Maricopa County.

4. At all relevant times, Defendant AIC was a California corporation doing business in Arizona.

5. At all times relevant, Mr. Haller was employed by Defendant within the meaning of A.R.S. § 41-1461 *et seq.* and 42 U.S.C.A. § 2000e *et seq.*

## GENERAL ALLEGATIONS

6. On January 23, 2008 Mr. Haller, a white man, began working for Defendant as the Director of Business Development in the Platform Solutions Group outside of his home in Arizona.

7. Mr. Haller provided services as the Director of Business Development in the AIC Platform Solutions Group.

8. Mr. Haller's job did not require him to be able to speak any language other than English.

9. Upon being hired, Mr. Haller purchased 45,000 shares of AIC stock as an investment and received 30,000 additional bonus shares as part of his hiring package.

10. On March 7, 2008, Mr. Haller signed a Stock Plan Agreement (the "Agreement") for 30,000 bonus shares of AIC stock.

11. The Agreement provided that Mr. Haller was entitled to keep the 30,000 bonus shares of AIC stock provided that his group contributed at least $5 in Taiwanese Dollars in earnings per share in AIC stock in 2010.

12. Mr. Haller's group contributed at least $5 in Taiwanese Dollars in earnings

per share of AIC stock in 2010.

13. AIC understood that as part of Mr. Haller's hiring package, Mr. Haller would be compensated in part with the 30,000 additional bonus shares.

14. During Mr. Haller's tenure at AIC, Mr. Haller received an additional 5,000 bonus shares of AIC stock.

15. Mr. Haller never signed an agreement for the additional 5,000 bonus shares of AIC stock.

16. In 2010, Mark Chen, a Business Manager at AIC and of Asian descent, began referring to Mr. Haller as the "head gweilo" which is a Mandarin ethnic slur meaning "ghost man."

17. In 2011, Flora Huang, a Business Manager at AIC and of Asian descent, also began referring to Mr. Haller as the "head gweilo."

18. On or about September 18, 2012, Mark Yang, Director of Sales at AIC and of Asian descent, referred to Mr. Haller as "the head gweilo" during a conversation.

19. Feeling that being called the "head gweilo" was derogatory, Mr. Haller complained to his direct supervisor, Sherman Tang, about the incident with Mr. Yang.

20. Mr. Haller never saw any corrective action take place resulting from his complaint with Mr. Tang.

21. On October 2, 2013, Michael Liang, AIC President and of Asian descent, directed Mr. Tang to terminate Mr. Haller because Mr. Liang could not communicate with Mr. Haller due to Mr. Liang's poor English skills.

22. On October 22, 2013, Mr. Haller learned that Defendant was in the process of hiring an Asian employee to take over Mr. Haller's former clients.

23. Mr. Haller received a "Notice of Involuntary Resignation" and the reason cited by AIC for Mr. Haller's termination was "discharge."

24. Mr. Haller's last day with AIC was on October 31, 2012.

25. After being terminated, Mr. Haller received his investment of 45,000 in AIC shares back, but never received the 30,000 bonus shares or the 5,000 additional bonus shares back.

26. This action arises out of contract, namely the AIC stock agreement between Plaintiff and Defendant; therefore, Plaintiff requests an award of his reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## COUNT I

**(Discrimination Based on Race in Violation of the Arizona Civil Rights Act, A.R.S. § 41-1463 *et seq.*)**

27. Plaintiff incorporates the allegations set forth in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. Arizona Revised Statutes Section 41-1463(B) prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race.

29. Defendant engaged in conduct, through its employees and agents, toward Mr. Haller because of his race, which was sufficiently severe or pervasive enough to alter the terms and conditions of his employment.

30. Defendant is liable for the acts of its employees or agents through the doctrine of *respondeat superior*.

31. As a result of Defendant's discrimination Mr. Haller suffered back pay, for which he should be compensated at trial pursuant to Arizona Revised Statutes Section 41-1481(G).

32. As a result of Defendant's discrimination, Mr. Haller suffered pain and suffering in an amount to be calculated at trial.

4

## COUNT II

(Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*)

33. Plaintiff incorporates the allegations set forth in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Title 42 of the United States Code Annotated Section 2000e-2 prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race.

35. Defendant engaged in conduct, through its employees and agents, toward Mr. Haller because of his race, which was sufficiently severe or pervasive enough to alter the terms and conditions of his employment.

36. Defendant is liable for the acts of its employees or agents through the doctrine of *respondeat superior*.

37. As a result of Defendant's discrimination Mr. Haller suffered back pay, for which he should be compensated at trial pursuant to Title 42 of the United States Code Annotated Section 2000e-5(g).

38. As a result of Defendant's discrimination, Mr. Haller suffered pain and suffering in an amount to be calculated at trial.

## COUNT III

(Breach of Contract)

39. Plaintiff incorporates the allegations set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Defendant's failure to return the 35,000 shares to Mr. Haller constitutes a breach of contract, entitling Plaintiff to an award of damages in an amount to be determined at trial, but in no event less than $4.59/share, the approximate value of AIC stock as of the date of this filing, for a total of $160,650.00.

## COUNT IV

### (Unjust Enrichment/Quantum Meruit)

41. Plaintiff incorporates the allegations set forth in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. Mr. Haller provided services to AIC as the Director of Business Development in the Platform Solutions Group.

43. AIC understood that the 35,000 bonus shares were part of Mr. Haller's compensation as the Director of Business Development in the Platform Solutions Group.

44. AIC was unjustly enriched by receiving Mr. Haller's services as the Director of Business Development in the Platform Solutions Group.

45. It would be unfair for AIC to receive the benefit of his services as the Director of Business Development in the Platform Solutions Group without fully compensating Mr. Haller with the 35,000 bonus shares.

## COUNT V

### (Breach of the Covenant of Good Faith and Fair Dealing)

46. Plaintiff incorporates the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. AIC's failure to return the 35,000 shares to Mr. Haller for the services he performed as the Director of Business Development in the Platform Solutions Group has deprived Mr. Haller of the benefit he bargained for when he entered into both the Agreement for the 30,000 bonus shares as well as the acceptance of the additional 5,000 bonus shares.

48. AIC's actions constitute a breach of the covenant of good faith and fair dealing, thereby entitling Mr. Haller to an award of damages in an amount to be determined at trial.

## COUNT VI

### (Defendant's Failure to Pay Wages Due to Mr. Haller in Violation of Arizona Revised Statutes Section 23-355, Entitling Mr. Haller to Treble Damages)

49. Plaintiff incorporates the allegations set forth in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. Defendant's failure to return the 35,000 shares due to Mr. Haller constitutes failure to pay wages due to Mr. Haller in violation of Arizona Revised Statutes Section 23-355.

51. Mr. Haller is entitled to treble damages in unpaid wages because of Defendant's failure to return the 35,000 shares owed to Mr. Haller.

## RELIEF SOUGHT

WHEREFORE, Mr. Haller requests that this Court:

A. Enter judgment on behalf of Mr. Haller, finding that Defendant AIC discriminated against Mr. Haller in violation of the Arizona Revised Statutes Section 41-1463(B);

B. Enter judgment on behalf of Mr. Haller, finding that Defendant AIC discriminated against Mr. Haller in violation of Title 42 of the United States Code Annotated Section 2000e-2;

C. Enjoin the Defendant, their successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any unlawful employment practice, including retaliation that violates Arizona Revised Statutes Section 41-1463 *et seq*;

D. Enjoin the Defendant, their successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any unlawful employment practice, including retaliation that violates Title 42 of the United States Code Annotated Section 2000e *et seq*;

1  E.  Order Defendant to make Mr. Haller whole and award Mr. Haller back wages,
2  and front pay calculated from the date of his wrongful termination on October 31, 2012;
3  F.  Order Defendant to pay Mr. Haller damages for pain and suffering in an
4  amount to be determined at trial;
5  G.  Order Defendant to pay Mr. Haller 35,000 of bonus shares calculated
6  according to current market value;
7  H.  Order an additional 70,000 of bonus shares for treble damages;
8  I.  Order an award of costs and reasonable attorneys' fees pursuant to Arizona
9  Revised Statutes Section 12-341.01;
10  J.  For such other and further relief as the Court deems appropriate.
11  RESPECTFULLY SUBMITTED this 18th day of October, 2013.
12  PHELPS LAW GROUP, PLC
13
14  By _____
    Jon L. Phelps
    Erica M. Fedon
15  4045 East Union Hills Road
    Suite A-104
16  Phoenix, AZ 85050
17  Attorneys for Plaintiff Seth Haller
18  Y:\&\JP\Employment Discrimination Clients\Haller\Complaint.doc

8

# VERIFICATION

I, Seth Haller, am the Plaintiff in this action. I declare, certify, and verify under penalty of perjury, as outlined in Rule 80(i) of the Arizona Rules of Civil Procedure, that the foregoing Verified Complaint is true and correct, except for those items that have been alleged upon information and belief, which I am informed and believe to be true.

EXECUTED this 18 day of October, 2013.

Seth Haller