**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Haller, et al., | No. CV-13-02398-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Advanced Industrial Computer Incorporated, et al., | |
| Defendants. | |

Defendant Advanced Industrial Computer, Inc. ("AIC") has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 38. The motion is fully briefed. The Court will deny the motion.[1]

**I.   Background.**

According to the second amended complaint, Plaintiff Seth Haller, a white man, was hired by AIC as the Director of Business Management of the Platform Solutions Group ("PSG"), one of AIC's three divisions. Doc. 31, ¶¶ 7, 15. As part of his compensation package, Haller was able to buy investment shares of T-Win Systems, Inc. (T-Win), AIC's parent company. *Id.*, ¶ 7. In addition, Haller would be entitled to a certain number of bonus shares based on the number of investment shares he purchased. *Id.* Haller purchased 45,000 investment shares, which entitled him to 30,000 bonus shares. *Id.*, ¶ 19. After beginning his employment with AIC, Haller was emailed by

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Sherman Tang, the vice president of PSG, about the bonus shares. *Id*., ¶ 20. Haller signed a Stock Purchase Agreement ("Agreement") for the bonus shares, which provided that if Haller's group contributed at least $5 in Taiwanese Dollars to earnings per share of AIC stock in 2010, Haller could keep the bonus shares. *Id*., ¶¶ 21-24. The Agreement was also signed by Michael Liang, the president of both AIC and T-Win. *Id*., ¶ 23.

Haller believed that he would be able to sell his investment shares and bonus shares after two events occurred: first, T-Win's stock had to have been traded as "penny stocks" in Taiwan for four consecutive quarters; second, the stock had to be listed on the Taiwanese national exchange. *Id*., ¶ 24. Once both events occurred, Haller would be free to sell all of his investment shares and 25% of his bonus shares. *Id*. From then on, Haller would be entitled to sell 25% of his bonus shares each year. *Id*.

During Haller's employment at AIC, he received an additional 5,000 bonus shares of T-Win stock, but never signed an agreement for the additional shares. *Id*., ¶ 33. In addition, Haller's group successfully contributed at least $5 in Taiwanese Dollars in earning per share of AIC stock in 2010. *Id*., ¶ 35.

In 2010, AIC employees began referring to Haller as "head gweilo," a Cantonese ethnic slur meaning "ghost man." *Id*., ¶¶ 36-38. Haller complained about the slurs to Tang but never saw any corrective action take place. *Id*., ¶¶ 39-40.

Eventually, Liang directed Tang to terminate Haller because Liang could not understand Haller due to Liang's poor English skills. *Id*., ¶ 41. Haller later learned that AIC was in the process of hiring an employee of Asian descent to take over Haller's former clients. *Id*., ¶ 42. After being terminated, Haller received his 45,000 investment shares, but never received his 30,000 bonus shares or the 5,000 additional bonus shares. *Id*., ¶ 46.

Plaintiffs brought this action pursuant to the Arizona Civil Rights Act and Title VII of the Civil Rights Act of 1964 alleging discrimination on the basis of race, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and failure to pay wages pursuant to A.R.S. § 23-355.

**II.     Legal Standard.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Analysis.**

**A.      Count Three: Breach of Contract.**

"For a plaintiff to bring a breach of contract action against a defendant, the plaintiff and defendant must have a contractual relationship." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). It therefore "is axiomatic that non-parties cannot be held liable for breach of contract[.]" *Herbal Care Sys., Inc. v. Plaza*, No. CV-06-2698-PHX-ROS, 2009 WL 692338, at *2 (D. Ariz. Mar. 17, 2009).

On April 7, 2014, the Court granted Defendant's motion for judgment on the pleadings with respect to Plaintiffs' breach of contract claim. Doc. 29 at 4-5. In so ruling, the Court found that AIC was not a party to the Agreement and rejected Plaintiffs' assertion that AIC was an alter ego or an agent of T-Win and vice versa. *Id*. Plaintiffs acknowledge in their filings that the Agreement is between T-Win and Haller. They have alleged additional facts and assert the alter ego and agency theories anew.

1    "A basic tenant of American corporate law is that the corporation and its
2    shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474
3    (2003) (citations omitted). This basic tenant applies to corporate parents and their
4    subsidiaries. *See id.* The veil separating a corporate parent and its subsidiary may be
5    pierced in some circumstances, but the doctrine of veil piercing is the "rare exception,"
6    applied in the case of fraud or certain other exceptional circumstances. *Id*. at 475. In
7    general, a parent corporation may be directly involved in the activities of its subsidiaries
8    without incurring liability so long as that involvement is "consistent with the parent's
9    investor status." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Appropriate
10   parental involvement includes "monitoring of the subsidiary's performance, supervision
11   of the subsidiary's finance and capital budget decisions, and articulation of general
12   policies and procedures[.]" *Id*. Nonetheless, "if the parent and subsidiary are not really
13   separate entities, or one acts as an agent of the other," the corporate veil may be pierced.
14   *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *El-Fadl v. Cent. Bank
15   of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)).

### 1. Alter Ego.

To satisfy the alter ego exception, the plaintiff must make out a two-part prima facie case: first, the plaintiff must show that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist, and second, the plaintiff must show that failure to disregard the entities' separate identities would result in fraud or injustice. *Unocal*, 248 F.3d at 926 (citing *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972)). Unity of control is shown when a parent exercises "substantially total control over the management and activities" of its subsidiary. *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991); *see also Unocal*, 248 F.3d at 926 ("The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."). A plaintiff may establish that a parent has substantially total control by showing, among other things, stock ownership by the parent, common officers or

directors, financing of the subsidiary by the parent, payment of salaries and other expenses of subsidiary by the parent, failure of subsidiary to maintain formalities of separate corporate existence, similarity of logo, and plaintiff's lack of knowledge of the subsidiary's separate corporate existence. *Gatecliff*, 821 P.2d at 728.

To support their alter ego theory Plaintiffs allege the following facts: Liang is the president of both entities, AIC is a wholly owned subsidiary of T-Win, T-Win controls AIC's hiring and firing decisions, T-Win sets delivery times and product pricing for AIC, T-Win controls AIC's product procurement and product manufacturing, T-Win and AIC share a unity of interest and ownership, failure to regard T-Win and AIC as alter egos would result in fraud or injustice against Haller, and T-Win is an alter ego of AIC and AIC is an alter ego of T-Win. Doc. 31, ¶¶ 8-14, 23.

Plaintiffs have pled sufficient facts to survive a motion to dismiss their alter ego claim. Alter ego determinations are highly fact-based. *See Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045 (D. Or. 2004). Plaintiffs allege total stock ownership by the parent corporation, common corporate officers, and the parent's substantial control of the subsidiary's business. Plaintiffs also allege that the president of both corporations was personally involved in and signed the stock acquisition agreement. Whether Plaintiffs can adduce sufficient evidence to support their alter ego claim must be addressed at summary judgment and, if necessary, trial, but the Court concludes that they have pled sufficient facts to move beyond the pleading stage.

**2.     Agency.**

Arizona courts generally follow the Restatement of Agency. *Fidelity & Deposit Co. of Md. v. Bondwriter of Sw., Inc.*, 263 P.3d 633, 639 (Ariz. Ct. App. 2011). The Restatement defines "agency" as "a consensual and fiduciary relationship" that "creates a [fiduciary] duty upon the agent to act in good faith and according to the terms of the agency agreement." *Maricopa P'ships, Inc. v. Petyak*, 790 P.2d 279, 281 (Ariz. Ct. Appeals 1989); *see* Restatement (Third) of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to

another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). In the setting of a corporate parent and subsidiary, the agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Unocal*, 248 F.3d at 928 (internal quotation marks and citation omitted).

Plaintiffs allege that T-Win acted with AIC's consent when it entered into the Agreement as part of Haller's recruitment package with AIC, T-Win acted on AIC's behalf when it entered into the Agreement to secure Haller's employment with AIC, T-Win was subject to the control and direction because AIC determined the number of bonus shares to which Haller was entitled, T-Win had authority from AIC to enter into the Agreement, and T-Win acted as AIC's agent in consummating the Agreement with Haller. Doc. 31, ¶¶ 27-31. These alleged facts adequately plead agency.

### 3.     Statute of Limitations.

AIC asserts that Count three is barred by a one-year statute of limitations. Doc. 38 at 8. "A statute-of-limitations defense, if apparent from the face of the complaint, may be properly raised in a motion to dismiss." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted).

The parties agree that the Agreement is an "employment agreement," *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 547 (Ariz. Ct. App. 2008), subject to a one year limitations period, A.R.S. § 12-541(3). Docs. 38 at 9, 47 at 6. The parties do not agree on when the limitations period began to run.

"A cause of action on a written contract accrues at the time of breach." *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1027 (Ariz. Ct. App. 1992) (citation omitted). AIC argues that the Agreement was breached (if at all) "sometime in 2011,

shortly after Haller's entitlement to the shares could be determined." Doc. 38 at 10. Plaintiffs argue that because no pay-out period is specified in the Agreement, the breach did not occur until either October 24, 2012, when Haller received his original investment shares and was put on notice of AIC's refusal to tender the bonus shares, or November 27, 2013, the first time Haller could have sold his bonus shares. Doc. 47 at 7.

The Court cannot determine at this stage when Plaintiffs' breach of employment contract claim accrued. AIC asserts without reference to the Agreement or any other authority that its obligation to provide the stock arose sometime in 2011. Doc. 38 at 10. The Agreement does not appear to support AIC's assertion – it does not specify a time at which Haller would be entitled to the bonus shares. AIC has not shown that the claim should be dismissed as time-barred.

### B. Count Four: Unjust Enrichment.

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) (citation omitted). To establish a claim for unjust enrichment, Plaintiffs must allege impoverishment on their part, enrichment to AIC, a connection between the two, an absence of justification, and the lack of a legal remedy. *See id.* Arizona follows the Restatement of Restitution, which provides that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." *See Advance Leasing & Crane Co., Inc. v. Del E. Webb Corp.*, 573 P.2d 525, 526-27 (Ariz. Ct. App. 1977).

Defendants' briefing appears to assume that the Court would reject Plaintiffs' alter ego and agency theories of liability. Defendants argue that Plaintiffs' unjust enrichment claim fails because Plaintiffs have alleged no facts showing AIC had an obligation to perform under the Agreement or that AIC was able, as a non-party to the Agreement, to take any action that could frustrate Haller's rights under the Agreement. Doc. 51 at 8. The Court concludes above, however, that Plaintiffs have pled adequate facts to support

- 7 -

their alter ego and agency theories of liability. If discovery reveals that T-Win and AIC are actually the same entity or that T-Win is AIC's agent, then AIC could have been capable of wrongfully interfering with Haller's rights under the Agreement. The Court cannot conclude at this stage that AIC was unable to take action that could frustrate Haller's rights under the Agreement. The Court will not dismiss Count four.

### C. Count Five and Six.

AIC argues that it cannot be liable to Plaintiffs for beach of the covenant of good faith and fair dealing or for failure to pay wages under A.R.S. § 23-355 because it is not a party to the Agreement. Doc. 38 at 7. For the reasons stated above, the Court concludes that Plaintiffs have successfully pled alter ego and agency theories that could make AIC liable for breach of the Agreement. By extension, Plaintiffs may also be able to recover against AIC for breach of the covenant of good faith and fair dealing and for failure to pay wages under A.R.S. § 23-355.

AIC also argues that Counts five and six are barred by the one-year statute of limitations in A.R.S. § 12-541(3). Doc. 38 at 8-9. Because the Court cannot determine when Defendants' alleged breach of the employment contract occurred, it cannot conclude at this time when the implied covenant was breached or when compensation was wrongly denied.

### D. Attorneys' Fees.

AIC has requested an award of attorneys' fees pursuant to A.R.S. § 12-341.01(A). Doc. 38 at 10. Because AIC's motion to dismiss has been denied, it is not a prevailing party entitled to attorneys' fees under the statute.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 38) is **denied**.

Dated this 15th day of August, 2014.

_____
David G. Campbell
United States District Judge