**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Seth Haller, et al., | No. CV-13-02398-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Advanced Industrial Computer Incorporated, et al., | |
| Defendants. | |

Defendant T-Win Systems, Inc. has filed a motion to dismiss for lack of personal jurisdiction. Doc. 97. The motion is fully briefed. The Court will grant the motion.[1]

**I.   Background.**

On January 23, 2008, Plaintiff Seth Haller was hired by Defendant Advanced Industrial Computer, Incorporated ("AIC") as the Director of Business Management of Platform Solutions Group ("PSG"), which is a division of AIC. Doc. 31, ¶¶ 7, 15, 16. Haller is an Arizona resident and predominately worked for PSG out of his home. Doc. 106-1, ¶ 5. AIC is a California corporation headquartered in City of Industry, California. Doc. 97-1, ¶ 4. It is a wholly owned subsidiary of T-Win Systems, Inc. ("T-Win"), which is a Taiwanese corporation with its principal place of business in the

---

[1] Defendant's request for oral argument is denied. The issues are fully briefed, and the Court finds that oral argument will not aid in the resolution of this matter. *See* D. Ariz. LR Civ. 7.2(f); Fed. R. Civ. P. 78(b).

Republic of China.² *Id.*, ¶¶ 3, 4.

T-Win manufactures products in Taiwan that are sold in the United States through AIC via purchase order. *Id.*, ¶¶ 5, 6. T-Win is not qualified to do business in the United States and has never done business in Arizona. *Id.*, ¶¶ 7, 8. It "does not own or lease any property in Arizona, does not advertise in Arizona, does not pay taxes in Arizona, and does not have offices, employees, equipment, operations, bank accounts, post offices boxes or telephone listings in Arizona." *Id.*, ¶ 8. Haller was not an employee of T-Win. *Id.*, ¶ 9.

Haller negotiated the terms of his compensation over the phone with Sherman Tang, vice president of PSG, from his home in Arizona. Doc. 106-1, ¶ 3. In mid-2009, Haller received notice that his home office had been designated as an AIC branch location for purposes of workers compensation. *Id.*, ¶¶ 6, 8. During his employment, Haller sold nearly $2 million worth of business to companies in Arizona. *Id.*, ¶¶ 8, 9. In addition, Haller recruited another Arizona resident, Sean Baeza, to work for PSG. Doc. 106 at 4. Baeza also worked from his Arizona residence. *Id.*

On October 18, 2013, Haller filed a lawsuit alleging that he was terminated from his employment with AIC based on his race, as well as several contract claims. The case was removed to this Court. Doc. 1. Shortly thereafter, Plaintiff filed an amended complaint naming AIC as the only Defendant. Doc. 8. On April 28, 2014, Plaintiff filed a second amended complaint naming both AIC and T-Win as Defendants and terminated Laura Haller as a party. Doc. 31. Although T-Win had not yet been served, Defendants filed a motion under Rule 12(b)(6) to dismiss several of Plaintiff's claims, arguing that the alter ego theory alleged in the second amended complaint was factually deficient. Doc. 38 at 4-6. On August 15, 2014, the Court denied the motion, noting that "[w]hether Plaintiffs can adduce sufficient evidence to support their alter ego claim must be

---

² Defendants note that T-Win has since changed its name to AIC, Inc. The Court will continue to refer to it as T-Win and Advanced Industrial Computer, Inc. as AIC, which is consistent with the Court's previous opinion in this matter. *See Haller v. Advanced Indus. Computer, Inc.*, No. CV-13-02398-PHX-DGC, 2014 WL 4053445, at *1 (D. Ariz. Aug. 15, 2014).

addressed at summary judgment . . . but the Court concludes that they have pled sufficient facts to move beyond the pleading stage." Doc. 60 at 5. On October 7, 2014, T-Win authorized counsel to accept service of process. Doc. 83. A month later, T-Win filed the instant motion to dismiss for lack of personal jurisdiction. Doc. 97. The parties have since engaged in substantial discovery.[3]

## II.     Legal Standard.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in Plaintiff's favor. *Id.*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the Constitution. *See, e.g.,* Ariz. R. Civ. P. 4.2(a); *see Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Under the Due Process Clause, a court may exercise jurisdiction over a person who is not physically present within the territorial jurisdiction of the court. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The nonresident generally must have certain minimum contacts with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial

---

[3] The Court has already addressed a Rule 12(b) motion in this case. When the previous motion was filed, however, T-Win had not yet been served. Therefore, the instant motion does not run afoul of Rule 12(g)(2).

- 3 -

justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**III.   Analysis.**

    **A.   Personal Jurisdiction.**

Plaintiff argues that this Court may exercise either general or specific personal jurisdiction over T-Win. Both theories require an analysis of the corporate defendant's contacts with the forum state. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014) (noting that "*International Shoe* indicates that a corporation may be subject to personal jurisdiction only when its contacts with the forum support either specific or general jurisdiction").

        **1.   General Jurisdiction.**

A court may assert general jurisdiction over a defendant if the defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)); *see Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d at 1287 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)). Haller argues that T-Win and AIC are essentially the same entity for purposes of jurisdiction, and thus AIC's contacts with Arizona must be imputed to T-Win. Because T-Win has virtually no contacts with Arizona, general jurisdiction turns on whether AIC is either an alter ego or an agent of T-Win.

           **a.   Alter Ego Analysis.**

As noted above, the Court previously found that Haller had alleged sufficient facts to state a claim under the alter ego theory. The Court further stated that it may revisit the issue after the factual record has been developed. Doc. 60 at 5. Since that time, the parties have completed discovery and have submitted jurisdictional evidence in support of their arguments. The Court now revisits the issue.

"Under the 'alter-ego' doctrine, a nonresident defendant may be subject to personal jurisdiction even if the defendant has not had any contact with the forum state." *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1177 (D. Ariz. 2010) (citing

*Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520-21 (9th Cir. 1989)). Jurisdiction may exist where a corporation with forum-state contacts "is the agent or alter ego of the individual defendant," or where "there is an identity of interests" between the corporation and the defendant. *Davis*, 885 F.2d at 520-21 (citations omitted); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). This determination is made in accordance with the law of the forum state. *Hambleton Bros. Lumber Co. v. Blakin Enterprises, Inc.*, 397 F.3d 1217, 1227 (9th Cir. 2005).

Under Arizona law, "corporate status will not be lightly disregarded." *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. 1979). To demonstrate alter ego status, a plaintiff "must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). In analyzing "unity of control," courts look to several factors, such as (1) common officers or directors, (2) financing of the subsidiary by the parent, (3) failure to maintain corporate formalities, (4) similarity of logo, and (5) payment of salaries and expenses of the subsidiary by the parent. *Id.* The parent must exert so much control that the subsidiary is "a mere instrumentality" of the parent. *Id.*

Haller's evidence and allegations focus almost exclusively on a single factor – that Michael Liang serves as the president of both companies and actively manages AIC. Haller presents more than thirty pages of authorization forms that identify the managerial authority within AIC. Docs. 31, ¶¶ 8-12; 106-4. The forms make clear that Liang's approval is required for various management functions, human resources functions, education and training, audits, and various other general affairs of AIC. *Id.* They also show that Liang must approve salary adjustments, bonuses, dismissals, retirements, purchases costing more than $2,000, entertainment expenses in excess of $1,000, and many other aspects of AIC's business. *Id.* But these are not unusual responsibilities for a company president, and the fact that Liang also serves as president of T-Win does not mean that AIC is T-Win's alter ego. "[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to

expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). "[D]irectors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Id.* (citations omitted).

The fact that T-Win and AIC share a common president who exercises control over some aspects of AIC's operation – as any president of AIC would – does not establish that AIC is the alter ego of T-Win. Evidence beyond common officers is required, and Haller has not provided it. He has submitted no evidence, for example, that T-Win finances AIC's operation, that AIC is undercapitalized, that T-Win pays the salaries of AIC employees, that AIC fails to maintain corporate formalities, or that Haller did not understand AIC's separate corporate existence. *See Gatecliff*, 821 P.2d at 728. In the absence of such additional evidence, Haller has not established a prima facie case of alter ego liability.

This conclusion is supported by the Ninth Circuit's decision in *Unocal*. The parent corporation provided financing for new acquisitions by its subsidiaries, referred to the subsidiaries as "divisions" in its annual reports, and was "involved directly in decision-making about its subsidiaries' holdings." 248 F.3d at 927-28. Because the evidence also showed that the subsidiaries were adequately capitalized and that the parent "maintained the corporate formalities by properly documenting its loans and capital contributions to its subsidiaries," however, the Ninth Circuit held that the plaintiffs had failed to show that the corporate status should be disregarded. *Id.*

The Court also concludes that Haller has failed to satisfy the second requirement for alter ego liability – that observance of the corporate form would sanction a fraud or promote injustice. *Gatecliff*, 821 P.2d at 728. The injustice identified by Haller is that they will not be able to recover their damages if T-Win is dismissed from this case. Doc. 106 at 7-8. But that is not the kind of evidence that satisfies the fraud or injustice requirement. As Arizona courts have noted, "'[w]hile it is clear that plaintiffs did not receive the benefit of their bargain, that alone does not constitute any evidence of

fraudulent conduct and it is not sufficient to justify the disregarding of the corporate entity.'" *Chapman v. Field*, 602 P.2d 481, 484 (1979) (quoting *Ferrarell v. Robinson*, 465 P.2d 610, 613 (1970)); *Dietel v. Day*, 492 P.2d 455, 458 (1972) (same).

### b. Agency.

Haller argues that contacts may be imputed between corporate entities if "the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Unocal*, 248 F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)). Haller argues that T-Win would be required to assume responsibility for selling its products in the United States market if AIC did not exist.

The Supreme Court has rejected this theory of personal jurisdiction, noting that it would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate[.]" *Daimler*, 134 S. Ct. at 760. The Court found that such a theory would "sweep beyond" the limits the Court has placed on general jurisdiction. *Id.*

### c. General Jurisdiction Conclusion.

Because Haller has not established a prima facie case for alter ego liability, AIC's contacts with Arizona cannot be imputed to T-Win for purposes of personal jurisdiction. In addition, Haller's agency theory has been rejected by the Supreme Court, and they have not otherwise shown that T-Win has contacts with Arizona sufficient for the exercise of general jurisdiction.

## 2. Specific Jurisdiction.

"A court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court." *Unocal*, 248F.3d at 923. The Ninth Circuit uses a three-part test to analyze specific jurisdiction. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741-42 (9th Cir. 2013), *cert. granted sub nom. Oneok, Inc. v. Learjet, Inc.*, 134 S. Ct. 2899

(2014). Specific jurisdiction exists only if: (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directed conduct at the forum that had effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *See id.* at 741-42 (citing *Schwarzenegger*, 374 F.3d at 802).

### a. Purposeful Availment.

Haller asserts claims against T-Win for breach of contract, unjust enrichment, breach of the covenant of good faith implied in contracts, and an Arizona statutory wage claim based on T-Win's failure to provide the compensation allegedly called for by the parties' contract. Doc. 31 at 8-11. In addressing specific jurisdiction with respect to such contract-related claims, the Ninth Circuit applies a "purposeful availment" test. "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation and quotation marks omitted).

Haller identifies a number of alleged Arizona contacts. These include negotiation and execution of the Stock Purchase Agreement, maintenance of an office in his home, designation of his home as an AIC branch, the hiring of Baeze as another sales person, and substantial sales in Arizona. But these contacts do not help Haller's argument. Haller negotiated the agreement over the phone with Sherman Tang, but Tang did not work for T-Win – he was vice president of PSG. Haller's house was designated as a branch location for AIC, but it was not so designated for T-Win. All of the other contacts were actions by Haller or AIC, not by T-Win.

T-Win's only connection to Arizona is that its name appears on the Stock Purchase Agreement with Haller, but this connection does not satisfy the purposeful availment test. This link to Arizona arises solely from Haller's choice of residence, not from any affirmative conduct on the part of T-Win. Courts have long held that "merely

contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Ziegler*, 64 F.3d at 473; *Boschetto*, 539 F.3d at 1017 ("the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction"); *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (same); *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (same); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (same).

Haller also argues that T-Win purposefully availed itself of the privilege of doing business in Arizona by sending its products into the Arizona market via AIC.[4] Generally, however, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Even if the defendant knows the product will enter the forum, such an act will not constitute purposeful direction. *Id.* Instead, the defendant's "transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted* the forum[.]" *J. McIntyre Mach., Ltd. v. NiCastro*, 131 S. Ct. 2780, 2788 (2011) (emphasis added).

T-Win shipped its products to AIC in California. AIC then sold the products to customers in Arizona. While it is plausible that T-Win knew these products may enter the Arizona market, there is no evidence that T-Win targeted Arizona by marketing its products to Arizona customers or shipping its products directly to Arizona. *See Echard v. Townsend Farms Inc.*, 992 F. Supp. 2d 958, 961 (D. Ariz. 2014) (finding no purposeful direction where the defendant shipped the product to a third party in Oregon who then incorporated the defendant's product into its own and sold it in states across the country, including Arizona). Given that T-Win and AIC are distinct corporate entities, T-Win should not be haled into an Arizona court merely because AIC shipped its products here.

---

[4] In making this argument, Haller relies on the "effects" test used in tort cases. That test does not apply here. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (noting that it is well established that the *Calder* "effects" test applies only to intentional torts, not to breach of contract or negligence claims).

- 9 -

Haller argues that *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986), requires a different conclusion. The Court disagrees. Not only did *Haisten* involve tort claims, which are analyzed under the "effects test," but its facts are distinguishable from this case. In *Haisten*, an insurance fund was set up in the Cayman Islands with the specific purpose of providing indemnity insurance for doctors at a California hospital. The fund was incorporated in the Cayman Islands, maintained its sole office there, and claimed that it did not solicit business in California. After an insured filed for bankruptcy as a result of a malpractice action, the plaintiff filed suit against the fund for satisfaction of the outstanding malpractice judgment. *Id*. at 1395.

The Ninth Circuit noted that the fund had no contacts with California and that "no part of the transaction for insurance took place in the forum state." *Id.* at 1397. The court nonetheless found that the fund purposefully directed "its commercial efforts toward California residents," namely the doctors at the California hospital. *Id.* at 1398. It further noted that the fund was specifically created for the doctors' benefit and was a "self-contained plan, whereby premiums from California physicians [were] disbursed to California physicians who suffer[ed] loss due to malpractice liability." *Id.*

Unlike the fund in *Haisten*, T-Win does not target its commercial efforts towards any particular state, let alone Arizona. T-Win merely responds to shipping orders from AIC and ships its products to AIC in California. Where its products ultimately end up is determined by AIC's business and sales efforts. Whereas *Haisten* involved a deliberate intent to service a select group of California residents, T-Win's contacts with Arizona are the result of a series of random acts committed by third parties.

### b. "Arising Out Of" and Reasonableness

Because Haller has failed to show that T-Win purposefully availed itself of the privilege of doing business in Arizona, the Court need not analyze the remaining elements of the Ninth Circuit test. *See Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of [the purposeful availment or arising out of] prongs, personal jurisdiction is not established in the forum state.").

**B.     Attorneys' Fees.**

T-Win asks the Court to award attorneys' fees under A.R.S. § 12-341.01(A), which permits an award to the successful party in an action arising out of contract.  After considering the relevant factors under this statute, *Am. Const. Corp. v. Philadelphia Indem. Ins., Co.*, 667 F. Supp. 2d 1100, 1106-07 (D. Ariz. 2009), the Court finds an award of fees inappropriate.  Although Haller's opposition to T-Win's motion proved unsuccessful, he was justified in opposing the motion and the legal arguments he advanced were not frivolous.

**IT IS ORDERED:**

1.     T-Win's motion to dismiss (Doc. 97) is **granted**.

2.     Defendant's request for attorneys' fees is **denied**.

Dated this 27th day of February, 2015.

_____
David G. Campbell
United States District Judge